# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| Builders Mutual Insurance Company, | ) ) ) | Civil Action No. 2:06-2608-CWH |
| Plaintiff, | ) ) | |
| vs. | ) ) | **ORDER** |
| The Burton Company, Inc., a/k/a The Burton Company Inc., John M. Burton, William J. Allen, III, and Margaret M. Allen | ) ) ) ) ) | |
| Defendants. | ) ) | |

The controversies addressed by this order arise out of two declaratory judgment actions filed by Builders Mutual Insurance Company, which are civil actions 9:06-1996 and 2:06-2608. In civil action number 9:06-1996, Auto-Owners Insurance Company, who is a defendant, also seeks a declaratory judgment. Builders Mutual Insurance Company and Auto-Owners Insurance Company are collectively referred to as "insurers."

The insurers issued Commercial General Liability policies ("CGL policies") to two general contractors, who are defendants in the two cases. The defendant general contractors are collectively referred to as "general contractors."

The general contractors submitted claims for coverage under the CGL policies to the insurers. The claims for coverage arise out of cases brought in state court against the general contractors by the purchasers of homes that were constructed by the general contractors. The purchasers are collectively referred to as "homeowners." The homeowners allege that the general contractors' faulty workmanship proximately caused damage to their houses. The

homeowners also allege that the faulty workmanship exposed portions of their homes to harmful conditions, such as moisture, causing damage. The state court cases have been pending for two to three years. As of this date, the state court cases remain pending. The attorneys for the parties advised the Court that, pursuant to South Carolina Rule of Civil Procedure 40(j), the state court cases were removed from the state courts' trial dockets for one year.

The insurers subsequently filed the cases in this Court. The insurers seek declaratory judgments that, for the following reasons, the CGL policies do not obligate them to defend or indemnify the general contractors for damages arising out of the state court cases. First, the CGL policies indemnify the general contractors for property damage caused by an occurrence. The insurers contend that faulty workmanship is not an occurrence. Second, the insurers claim that the damages alleged in the state court cases are not property damage. Third, the insurers claim that for the following reasons, the CGL policies exclude damages resulting from the state court cases:

1. The general contractors knew that the damages occurred prior to purchasing the policies.
2. The general contractors expected or intended the damages.
3. Faulty workmanship and damages arising out of faulty workmanship are excluded.[1]
4. Property damages arising out of a general contractors' product are excluded.
5. Damages to repair a general contractors' faulty workmanship that occur after the completion of a project are excluded.[2]
6. Mold and mildew damages are excluded.

In the cases before this Court, the general contractors filed motions to dismiss, which

---

[1] This exclusion is inapplicable to damages occurring after a general contractor completes a project.

[2] Subcontractors performed most of the work to the homes.

request the Court to decline jurisdiction.  The grounds for the motions are that the issue of

whether CGL policies cover damages resulting from faulty workmanship is unsettled in South

Carolina and that adjudicating the declaratory actions will create entanglement with the pending

state court cases.  The motions have been filed in separate cases, but they raise the same issues.

Consequently, the Court will address the motions in identical orders.

I.     Motion to dismiss

The general contractors contend that the Court should exercise the discretion provided by

the Declaratory Judgment Act and dismiss the cases.   "[A]ny Court of the United States, upon a

proper pleading, *may* declare the rights and other legal relations of any interested party seeking

such declaration . . . ."  28 U.S.C. § 2201(emphasis added).   A decision to grant declaratory

relief is in the discretion of the Court.  See Nautilus v. Winchester Homes, Inc., 15 F.3d 371, 375

(4th Cir. 1994)(reversed on other grounds).

A.     Utility of the action

A district court should entertain a declaratory action when the relief sought: "(1) will

serve a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate

and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."

Nautilus, 15 F.3d at 377 (citing Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir.

1937)).

1.     Useful purpose in clarifying and settling legal relations in issue

The controversy before the Court is whether the insurers have obligations to defend the

general contractors in the state cases and to indemnify the general contractors for damages

arising out of the state court cases.  *See* United Capitol Insurance Co. v. Kapiloff, 155 F.3d 488,

494 (4th Cir. 1998).  Resolving the insurers' duty to defend obligations in advance of the

adjudication of the general contractors' liability may allow the insurers to avoid unnecessary

defense costs.  In addition, resolving indemnity issues in advance of the adjudication of the

general contractors' liability provides guidance and structure to potential settlement negotiations

in the state court cases.  Nautilus, 15 F.3d at 376.  The declaratory judgment actions will serve

useful purposes.

> 2.    Terminate and afford relief from the uncertainty, insecurity, and
> controversy giving rise to the proceedings

The insurers are currently defending the general contractors in the state court actions.

Courts should decide whether an insurer has a duty to defend an insured in the liability action

before a determination of an insured's liability.  Penn-America Insurance Co. v. Coffey, 368

F.3d 409, 413-414 (4th Cir. 2004) and Mitcheson v. Harris, 955 F.2d 235, 241 (4th Cir.

1992)(Hall, J. dissenting).  The declaratory actions can terminate the uncertainty of whether the

insurers have a duty to defend the general contractors in the state court cases.

The general contractors have not been held liable for the damages to the homes, and the

insurers' potential duty to indemnify the general contractors has not arisen and may never

accrue.  Therefore, the Court must decide whether it should attempt to resolve the indemnity

issues before the general contractors' liability is determined.

As a general practice, courts wait until litigation or agreement decides an insured's

liability before deciding whether an insurer must indemnify.  Travelers Indemnity Co. v. Miller

Building Corp., 2007 WL 685230 (4th Cir. 2007).  However, when indemnity issues raise either

purely legal questions or factual issues not present in the liability action, a declaration resolving

indemnity issues before a determination of liability is warranted.  Coffey, 368 F.3d at 413.

-4-

Therefore, the Court may resolve the indemnity issues if doing so involves either purely legal questions or factual issues not raised in the state court proceedings.

    B.  Federalism

    When a parallel state court action is pending, a court's decision to abstain must be guided not only by the utility served by the action but also by considerations of federalism, comity, and efficiency.  Nautilus, 15 F.3d at 376-377.  The factors a court must consider relating to these concerns are as follows:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in state court; (2) whether the issues raised in the federal action can be more efficiently resolved in the pending state court action; (3) where the federal action might result in unnecessary entanglement between the federal and state systems due to overlapping issues of fact or of law; and (4) whether the federal action is being used merely as a device for procedural fencing i.e. to provide another forum in a race for res judicata.

Id. at 377.

    1.     South Carolina's interest in deciding the issues raised in this action

    The Fourth Circuit Court of Appeals has held that state courts have a strong interest in resolving unsettled issues of state law.  Nautilus Insurance Co. v. Winchester Homes, Inc., 15 F.3d 371, 378 (4th Cir. 1994); see also Penn-America Insurance Co. v. Coffey, 368 F.3d 409, 414 (4th Cir. 2004)(a state's interest is not significant where any state law issues are standard and unlikely to break new ground).

    The CGL policies insure, in the absence of an applicable exclusion, property damages caused by an occurrence.  The policies define occurrence as "an accident including continuous or repeated exposure to substantially the same general harmful conditions."

    The state court complaints allege that the general contractors' faulty workmanship

proximately caused damages to the houses, including moisture damage.  The insurers request declarations that faulty workmanship does not constitute an occurrence.  The general contractors argue that the issue of whether faulty workmanship constitutes an occurrence is unsettled in South Carolina.

In L-J, Inc. v. Bituminous Fire and Marine Insurance Co., a developer sued a general contractor to recover for a faulty road constructed by subcontractors.  The developer alleged breach of contract, breach of warranty, and negligence.  The general contractor and the developer settled the case.  The general contractor subsequently brought a declaratory judgment action against one of its CGL carriers for indemnity and costs to defend the suit.  The lower state court held that the CGL policy indemnified the general contractor for the damages to the road.  The court held that the damages were caused by an occurrence and were not expected by the general contractor.  In addition, the court held that the policy did not exclude damages arising out of a subcontractor's faulty workmanship and occurring after the completion of a project.

The South Carolina Court of Appeals affirmed the decision.  L-J, Inc. v. Bituminous Fire and Marine Insurance Co., 350 S.C. 549 (Ct. App. 2003).  The Court of Appeals stated that the faulty workmanship on the road caused an occurrence, the intrusion of rainwater, and the intrusion of rainwater caused the damage to the road.  Id. at 555.  The Court of Appeals also held that the general contractor did not expect the intrusion of rainwater.  Id.  The Court of Appeals further held that a CGL policy does not exclude damages arising from a subcontractor's negligence when the damages occur after the completion of a project.  Id. at 558-559.

The South Carolina Supreme Court reversed.  L-J, Inc. v. Bituminous Fire and Marine Insurance Co., 366 S.C. 117 (2005).  The Supreme Court held that the third-party complaint

against the general contractor only alleged damages to repair faulty workmanship and that the evidence in the case only suggested damages to repair faulty workmanship.  Id. at 122.  Because faulty workmanship is not caused by an occurrence, the Supreme Court held that the CGL policy did not provide coverage for the claims to the road.  Id.  The Supreme Court reasoned that its decision would require general contractors to seek indemnity for a subcontractor's negligence from the subcontractor instead of a CGL carrier and encourage general contractors to more carefully choose its subcontractors.  Id.  The Supreme Court also stated, in dicta, that CGL policies may provide coverage when the third-party complaint alleges moisture damage resulting from faulty workmanship.  L-J, Inc., 366 S.C. at 123 (citing New Hampshire Supreme Court decision High Country Associates v. New Hampshire Insurance Co., 648 A.2d 474 (1994)).

The Supreme Court clearly held that CGL policies do not provide coverage when the third-party complaint alleges only damages to repair faulty workmanship.  However, the Supreme Court did not address the issue arising when the third-party complaint alleges that faulty workmanship resulted in the continuous exposure to moisture, which then caused moisture damage.

Courts in this district have issued conflicting answers to the issue.  The Honorable David C. Norton interpreted L-J, Inc. to hold that all damages to repair a general contractor's work product are damages to repair faulty workmanship, regardless of an allegation that the exposure to moisture caused some of the damage.  Bituminous Casualty Corp. v. R.C. Altman Builders, Inc., 2006 WL 2137233, * 5 (D.S.C. 2006).  Conversely, the Honorable Patrick M. Duffy interpreted L-J, Inc. to hold that a general contractor's CGL policy covers moisture damages to a general contractor's work product that resulted from faulty workmanship.  Okatie Hotel Group,

LLC v. Amerisure Insurance Co., 2006 WL 91577, *6 (D.S.C. 2006).  These conflicting

interpretations of L-J, Inc demonstrate that the issue is unsettled.

The state court complaints allege that faulty workmanship and the exposure to moisture

caused damage to the houses.  The Court must resolve the issue of whether damages proximately

caused by faulty workmanship and the exposure to moisture constitute damages caused by an

occurrence to determine whether the insurers have a duty to defend and indemnify the general

contractors.  The issue is unsettled in South Carolina.  A state court has a strong interest in

resolving unsettled issues of its law.  Nautilus Insurance Co., 15 F.3d at 378.  Consequently, this

factor counsels the Court to allow a South Carolina court to resolve the unsettled issues raised by

L-J, Inc.

2.    Whether the issues raised in the federal action can be more efficiently
decided in state court

To evaluate efficiency concerns, a court should determine whether "the questions in

controversy between the parties to the federal suit . . . can better be settled in the proceedings

that are already pending in the state court."  Nautilus Insurance Co., 15 F.3d at 378.  This

decision is guided by a number of factors including: (1) the nature and scope of the state

proceeding and (2) whether the claims of the parties in interest can satisfactorily be adjudicated

in the state court proceeding.  Centennial Life Insurance Co. v. Poston, 88 F.3d 255, 257 (4th Cir.

1996).

The insurers are not parties to the state court cases.  Moreover, the issue of whether the

CGL policies indemnify the general contractors for damages caused to the homeowner's houses

are not before the state court.  Therefore, dismissing the action with the hope that the claims will

be filed in state court is not the most efficient use of judicial resources.  Nautilus Insurance Co.,

15 F.3d at 378-379 and <u>Coffey</u>, 368 F.3d at 414.

   3.  Overlapping issues of fact or law that might create entanglement

   To avoid interfering with the progress of a state court action, a district court should not render decisions in a declaratory judgment action on factual and legal issues that will also be decided in a state court action. <u>Mitcheson v. Harris</u>, 955 F.2d 235, 239 (4th Cir. 1992). The insurers request the Court to declare that the policies neither obligate them to defend the general contractors in the state court cases nor indemnify the general contractors for damages arising out of the state court cases.

   a. Duty to defend

    1. Factual overlap with the state court cases

   The duty of a liability insurance company to defend a claim is determined by the allegations of the third-party's complaint. <u>Isle of Palms Pest Control Co. v. Monticello Insurance Co.</u>, 319 S.C. 12, 15 (Ct. App. 1995). If the underlying complaint creates a possibility of coverage, the insurer is obligated to defend. <u>Id.</u> Resolving factual issues is not necessary to determine whether an insurer has a duty to defend, and no factual issues overlap.

    2. Legal overlap with the state court cases

   The parties have not identified overlapping legal issues.

   b. Duty to indemnify

    1. Factual overlap with the state court cases

   The duty of a liability insurance company to indemnify an insured for damages arising out of a claim is determined by the allegations of the third-party's complaint. <u>Isle of Palms Pest Control Co.</u>, 319 S.C. at 15. The insurers' duty to indemnify will depend on this Court's

-9-

resolution of facts alleged in the third-party complaint relating to the cause of the damages to the houses. Coffey, 368 F.3d at 413.

Assuming L-J, Inc. stands for the proposition that a CGL policy covers moisture damage resulting from faulty workmanship, the Court will have to distinguish the damages to repair faulty workmanship from the damages to repair moisture damage. The Court must also determine whether the general contractors expected, from their standpoint, the moisture damage.

The state courts will not distinguish the moisture damage from the damage to repair faulty workmanship. Rather, the state courts will determine whether the faulty workmanship proximately caused the damage to the houses, including the moisture damage. Therefore, the state courts will determine whether the moisture damage was a foreseeable consequence of the general contractor's alleged faulty workmanship. "The standard by which foreseeability is determined is that of looking to the natural and probable consequences of the complained of act." Young v. Tide Craft, Inc., 270 S.C. 453, 462-463 (1978). An actor need not contemplate or anticipate the particular event which occurred, he may be liable for anything which appears to have been a natural and probable consequence of his negligence. Id.

This Court's potential holding that the general contractors expected the moisture damage will decide the issue before the state courts of whether the general contractors contemplated or anticipated the moisture damage. Such a decision will resolve the foreseeability issues in the state court cases. The Court should avoid rendering a decision that will preclude decisions in the state court. Mitcheson, 955 F.2d at 239-240.

c.  Conclusion

Resolving the duty to defend claims will not create entanglement with the state court

-10-

cases.  However, resolving the duty to indemnify claims may preclude factual causation decisions in the state court cases and create entanglement.

### 4.  Procedural fencing

The Court should determine whether the declaratory action is being used to "provide another forum in the race for res judicata or to achieve a federal hearing in a case otherwise non-removable."  Nautilus Insurance Co., 15 F.3d at 377.

The insurers brought these cases to determine whether they have a duty to indemnify and defend the general contractors in the state court cases.  An action filed by an insurer to obtain the prompt resolution of a dispute over the obligations to defend and indemnify its insured arising from a separate and independent tort action filed against it in state court is appropriate for early resolution in a declaratory action.  Nautilus Insurance Co., 15 F.3d at 380.  The Fourth Circuit Court of Appeals approves of these cases.  The Court is not convinced that the cases are being used as a device for procedural fencing.

### C.  Conclusion

The Court determines that the following solution is the most efficient method to resolve the issues presented by the analysis of the utility and federalism factors.

The duty to defend issue is a question of law.  If an insurer has no duty to defend, it has no duty to indemnify.  To decide whether the insurers have a duty to defend and indemnify the general contractors in the state court cases, the Court must first determine whether L-J, Inc. holds that CGL policies provide coverage for damages caused by faulty workmanship and moisture exposure.  However, as explained above, South Carolina has a strong interest in resolving the unsettled issue presented by L-J, Inc.

-11-

The South Carolina Supreme Court in its discretion may answer questions from a federal court that are determinative of a claim and are not controlled by existing precedent in the decisions of the Supreme Court.  S.C. App. Ct. R. 228(a).  Certifying a question to a state's highest court is appropriate when the state law is unsettled.  Lehman Bros v. Schein, 416 U.S. 386, 391 (1974).

The Court may resolve the insurers' duty to defend and avoid deciding an unsettled issue of state law by certifying the question raised in L-J, Inc. to the South Carolina Supreme Court. Moreover, if the Supreme Court holds that CGL policies do not provide coverage for the moisture damage, the insurers have no duty to defend and no duty to indemnify.  The Court may then enter final judgment for the insurers.

If L-J, Inc. stands for the proposition that CGL policies may provide coverage for damages caused by faulty workmanship and moisture exposure, the Court may not be able to resolve the insurers' duty to indemnify without creating entanglement with the state court cases. However, because the Supreme Court may resolve the entire controversy presented before this Court, declining jurisdiction over the duty to indemnify claims at this stage of the proceedings is not an efficient use of judicial resources.  Based on the uncertainty of the Supreme Court's answers to the certified questions, the Court is currently unable to determine whether it should decline jurisdiction over the duty to indemnify claims.

 Accordingly, the Court will certify the question of whether a CGL policy covers damages caused by faulty workmanship and the exposure to harmful conditions.  The Court denies the motions to dismiss without prejudice and with leave to re-file after the Supreme Court issues the answers to the unsettled issues raised by L-J, Inc.  The Court directs the parties to

submit to this Court proposed orders for certification within 30 days of the filing of this order.

The proposed orders must comply with Rule 228 of South Carolina Appellate Court Rules.

**AND IT IS SO ORDERED**.

_____
**C. WESTON HOUCK**
**UNITED STATES DISTRICT JUDGE**

August 7, 2007
Charleston, South Carolina